[No. A034565. First Dist., Div. One. July 23, 1987.]

In re the Marriage of CHERYL K. and PHILLIP C. KEPLEY.
PHILLIP C. KEPLEY, Respondent, v.
CHERYL K. KEPLEY, Appellant.

**COUNSEL**

David M. Schotte and Worthington, Smith, Marshall & Schotte for Appellant.

Leonard J. Falinski for Respondent.

**OPINION**

**NEWSOM, J.**—This is an appeal from an order denying Cheryl K. Kepley's request for an increase in child support payments. The order is reversed.

An interlocutory judgment of dissolution of the marriage of Phillip C. Kepley and appellant was filed on August 3, 1982. At that time, the parties agreed that appellant would have physical custody of the couple's children, then six and twelve years old, and that respondent would pay child support in the amount of $150 per month per child.

On September 16, 1985, appellant filed an order to show cause, requesting modification of the child support order to increase the payments to $250 per month per child. Her income and expense declaration showed that she had a monthly income of $566.66 from investments, and total monthly expenses of $1,399.88.

Respondent filed a responsive declaration agreeing to an order increasing support payments "per Agnos"[1] if appellant was ordered to seek employment. Respondent's income and expense declaration showed a monthly income of $3,285.08 with expenses of $3,033. The minimum child support worksheet calculated pursuant to the Agnos Act showed a minimum child support award of $393.42 for both children based upon the above declarations.

A hearing was held on November 21, 1985, at which the following facts were adduced. Appellant testified that she and the children had lived with Keith Johnson in a home owned by Mr. Johnson for the past four years. Appellant did not know Mr. Johnson's income and did not have an agreement for sharing expenses with him, although she purchased the food for the household and did not pay rent, while Johnson paid all mortgage, utility, and tax payments relating to the house. Appellant did the housework, laundry and cleaning, and Johnson paid her medical expenses, although appellant had not incurred any medical expenses in over a year. Johnson did not contribute any amounts for the children's expenses. In 1984, appellant withdrew $4,800 from one of her investment accounts to purchase a television satellite dish which was installed on Johnson's property.

Appellant had not worked or searched for work since she quit her job as a waitress in 1981. Discounting her estimated cost of child care for the young-

[1] This reference is to the Agnos Child Support Standards Act of 1984 (Civ. Code, § 4720 et seq.).

est child (who was nine years old at the time of the hearing), appellant estimated she could earn an additional $200 to $300 a month if she returned to work. Appellant testified that she had two years of college and held a clerical certificate from the college.

Respondent's testimony disclosed that since the filing of his financial declaration, his income had been reduced to $3,200 per month as a result of severe heart problems, which had precluded him from working overtime. In addition, he lost interest income of approximately $187 per month after the satisfaction of a note. He lost an amount roughly equal to the proceeds of the payment of the note when he was the victim of an investment fraud. In addition, the promoter of the fraudulent scheme had induced him to refinance his home, which resulted in an increased mortgage payment. He requested a hardship deduction of $326 based upon his investment loss. Respondent's wife, a licensed vocational nurse, had contributed $243 per month in income, but was not employed at the time of the hearing.

At the end of the hearing, respondent's counsel stated that he agreed that the support order should be revised, and that the new amount should be $393.42, pursuant to the Agnos Act. The court noted that this figure did not take into consideration respondent's loss of income, but that appellant had established a need for the modification.

On November 26, 1985, the court filed its opinion and order denying the request for modification, stating that appellant's income was approximately $646 per month, but that respondent had sustained a very substantial lessening of his income and an increase in his living expenses due to the investment loss. The court concluded that respondent was unable to pay increased child support, and that the case of *In re Marriage of Leib* (1978) 80 Cal.App.3d 629 [145 Cal.Rptr. 763] also supported the denial.[2] On March 20, 1986, a notice of appeal from the November 26 order was filed.

The court requested briefing of the threshold issue of the timeliness of the notice of appeal, filed 114 days after the clerk mailed copies of the order to the parties. Respondent correctly notes that a formal "Notice of Entry of Judgment" is not required. ■ Appellant, however, argues that she had 180 days to file her notice of appeal, as the clerk was not *required* by Code of Civil Procedure section 664.5 to mail notice of entry of the order. Although this court is reluctant to hold that an appealing party may ignore actual service of a filed copy of the order appealed from, we conclude that appellant has correctly interpreted the relevant statutes and rules of court.

---

[2] The court also disposed of an issue regarding an order to show cause re contempt which is not relevant to this appeal.

Rule 2(a) of the California Rules of Court provides: "(a) [Normal time] Except as otherwise provided by Code of Civil Procedure section 870 or other statute, *a notice of appeal shall be filed within 60 days after the date of mailing notice of entry of judgment by the clerk of the court pursuant to section 664.5 of the Code of Civil Procedure,* or within 60 days after the date of service of written notice of entry of judgment by any party upon the party filing the notice of appeal, or within 180 days after the date of entry of the judgment, whichever is earliest, unless the time is extended as provided in rule 3. [Italics added.]" (The term "judgment" includes an appealable order; Cal. Rules of Court, rule 40(g).) Thus, unless the clerk's notice in this action was pursuant to Code of Civil Procedure section 664.5, appellant had 180 days in which to file.

Section 664.5 provides for notice of entry of judgment in superior courts by the parties in most instances. The only reference to service of notice of entry by the clerk states: "Upon order of the court in any action or special proceeding, the clerk shall mail notice of entry of any judgment or ruling, whether or not appealable." (Code Civ. Proc., § 664.5, subd. (c).) Further support for the argument that notice by the clerk in the absence of a court order does not start the running of the time period for filing a notice of appeal is found in rule 309 of the California Rules of Court, which provides: "When the court rules on a demurrer or motion or makes an order or renders a judgment in a matter it has taken under submission, the clerk shall forthwith notify the parties of the ruling, order or judgment. The notification, which shall specifically identify the matter ruled upon, may be given by mailing the parties a copy of the ruling, order or judgment, and *it shall constitute service of notice only if the clerk is required to give notice pursuant to Code of Civil Procedure section 664.5.* The failure of the clerk to give notification shall not extend the time provided by law for performing any act except as provided in rule 2(a) or rule 122(a)." (Italics added.)

In a footnote in *Pacific City Bank* v. *Los Caballeros Racquet & Sports Club, Ltd.* (1983) 148 Cal.App.3d 223, 227 [195 Cal.Rptr. 776], the court stated that rule 204 (the predecessor of rule 309) requires some evidence in the record of the court's intent to provide notice to the parties before the clerk's notice will commence the running of the time for filing notice of appeal. The court found such an intent in the court's statement transcribed in the reporter's transcript: " 'The matter's submitted. I'll notify the parties within ten days.' " (*Id.,* at p. 227.) The court noted that "[h]ad the court merely taken the matter under submission, and absent the court's intent to provide notice, performance of the clerk's statutory duty under rule 204 would not 'constitute service of notice.' " (*Id.,* at p. 227, fn. 8.)

In the instant case, the court merely stated: "The matter is submitted. I will decide it pretty promptly." Although it is arguable that the court's

intent to notify the parties of its decision can be inferred from the fact that the court itself, rather than one of the parties, drafted the order at issue, Code of Civil Procedure section 1003 defines "order" as directions made or entered in writing, and there is no express written indication of the court's intent that the clerk serve notice of the order on the parties. Additional support for appellant's position exists in Code of Civil Procedure section 1019.5, which states that the prevailing party on a motion must give notice unless the court otherwise orders, or notice is waived in open court. It is undisputed that respondent never gave notice of entry of the order.

In light of the policy that appeals should be heard on their merits, and the language of rule 309, it is concluded that appellant's notice of appeal was timely and the substantive issue raised by appellant shall be considered on its merits.

■ A determination regarding whether a modification in a support award is warranted will be upheld in the absence of an abuse of discretion. (*Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 119 [96 Cal.Rptr. 408].) Any conflicts in the evidence are resolved in support of the trial court's determination. (*Ibid.*) ■ Citing the relevant provisions of the Agnos Act, appellant contends that the court misapplied the act by failing to order an increase in support payments. Appellant argues that no hardship allowance could have been granted to respondent absent the express findings required by Civil Code section 4725. In addition, appellant states that *In re Marriage of Leib, supra,* 80 Cal.App.3d 629, applies only to cases involving spousal support, and could not support the court's decision.

In adopting the Agnos Act, the Legislature made express findings that the lack of a single standard to promote fair and adequate child support awards led to substantial variation in awards among similarly situated families. (Civ. Code, § 4720, subds. (a) and (b).) The Legislature declared its intent to establish a system of standards to provide for a statewide minimum award of child support. (Civ. Code, § 4720, subd. (d).) The act provides that "in no event shall the court award less than the mandatory minimum child support allowable pursuant to this chapter." (Civ. Code, § 4720, subd. (d).) The act provides for departures from its mandatory provisions only in exceptional circumstances. (Civ. Code, § 4720, subd. (e).)

The minimum mandatory amount of support is determined by calculating each parent's annual gross income, as defined in Civil Code section 4721, subdivision (a), and deducting specified items to obtain the "annual net disposable income." (Civ. Code, § 4721, subd. (c).) If the combined net income exceeds the current AFDC (aid to families with dependent children program, Welf. & Inst. Code, § 11200 et seq.) standard for the number of

children involved, the minimum award is the AFDC standard, or, in this case, $474 per month. (Civ. Code, § 4722.)[3] The amount each parent shall contribute is based on that parent's proportionate contribution to the combined net disposable income. (Civ. Code, § 4722.)

Civil Code section 4725 provides for income deductions when a parent experiences enumerated financial hardships.[4] If an income deduction for financial hardship is allowed, the court must state on the record the reasons for the deduction, the documentation of the facts, and the amount so allowed. (Civ. Code, § 4725, subd. (c).)

In this case, by maintaining the support payments at $300 per month, the court has apparently sanctioned an award below the Agnos minimum.[5] In support of its award, the court stated that respondent had lost "all his overtime" and sustained an increase in living expenses. It is not clear whether the court was determining that these circumstances constituted statutory hardship. If so, the court failed to identify the documentation of the underlying facts and the amount of deductions allowed, as required by section 4725, subdivision (c). In the absence of appropriate findings, the court's language regarding respondent's finances does not support a determination of hardship. In addition, the evidence regarding the amount of respondent's decreased income does not support an award of $300 under the provisions of the Agnos Act.

Respondent argues that the court's citation of *In re Marriage of Leib, supra,* 80 Cal.App.3d 629, supports the decision. Appellant contends that *Leib* does not apply to child support actions. In general, *Leib* dealt with a decrease in spousal support payments where the supported spouse maintained an apparent financial need by giving away her housekeeping services to a cohabitant of the opposite sex. (*Id.,* at pp. 640-641.)  ■  Although *Leib* concerned spousal support, consideration of earning capacity is relevant in child support actions as well. Prior to enactment of the Agnos Act, a parent's capacity to earn, as opposed to actual earnings, was sometimes considered in determining child support awards. (See, e.g., *In re Marriage of*

---

[3] The amount of $474 per month is taken from the July 1, 1985, table printed on Judicial Council of California Form 1285.25.

[4] Section 4725, subdivisions (a) and (b), lists extraordinary health expenses, uninsured catastrophic losses and expenses of other dependent minor children.

[5] This conclusion is based upon the court's determination that appellant's income was $646 per month, and respondent's testimony that his current (reduced) income was $3,200 per month. Subtracting respondent's authorized deductions of $717.50 leaves $2,482.50 net disposable income. Appellant claimed no deductions on her income and expense declaration. This amounts to a combined net income of $3,128.50, with respondent's percentage contribution being 79 percent of the minimum $474 which is $374.46.

*Williams* (1984) 155 Cal.App.3d 57, 62-63 [202 Cal.Rptr. 10]; *Philbin* v. *Philbin, supra,* 19 Cal.App.3d 115.)

In setting the standards for determining and apportioning the mandatory minimum child support award under the Agnos Act, the Legislature has expressly provided that "the court shall also consider, to the extent consistent with the best interests of the child or children, the earning capacity of either or both parents." (Civ. Code, § 4721, subd. (a).) Thus, in applications for modification of child support orders made on or after the effective date of July 1, 1985, the Agnos Act not only allows but requires a court to consider earning capacity of either parent, to the extent that the needs of the children do not require the parent to remain at home. (Civ. Code, § 4729.)

■ However, even though consideration of earning capacity is appropriate in child support matters, the evidence in this case does not support a refusal to increase the support award. Although respondent suggests that the court rejected appellant's testimony as to her actual income, the court expressly found that appellant's income was "about $646.00 per month." Appellant testified that she could realize a net increase of $200 to $300 a month if she obtained work. Even viewing the evidence in the light most favorable to the decision, adding $300 to the $646 would bring her income to $946 per month. Using the Agnos Act calculations, this would still not support maintenance of respondent's child support obligation at $300 per month.

The clear purpose of the Agnos Act is to establish mandatory uniform minimum child support awards. Although consideration of earning capacity is appropriate, the facts adduced in this case on that issue do not, without more, support the decision. Although a hardship exemption was claimed, the findings are insufficient to support application of the exemption and its applicability is doubtful.

Discretionary factors, used before the enactment of the Agnos Act, may be considered when the court is asked to award an amount greater than the mandatory minimum. (Civ. Code, § 4724.) These factors are set forth in local support guidelines, relevant case law, and applicable statutes not in conflict with the act. (Civ. Code, § 4724, subd. (a).) These factors include the child's need and the ability of a parent to pay. (4 Cal. Family Law Service (1986) § 43:37, pp. 502-503.) Consideration of these factors is not appropriate in determining and allocating the mandatory minimum, unless the factors constitute "exceptional circumstances" allowing a departure from the mandatory provisions of the act. (Civ. Code, § 4720, subd. (e).) To

the extent that the trial court considered discretionary factors regarding respondent's ability to pay which are not enumerated in the act or do not amount to exceptional circumstances, such consideration was improper.

The order is reversed and remanded for redetermination under the provisions of the Agnos Act. Appellant shall recover costs.

RACANELLI, P. J.—I reluctantly concur.

I agree that under the law as presently written, appellant's notice of appeal was timely. I am therefore compelled to concur in the result. However, I doubt that the drafters of California Rules of Court, rule 2(a) intended the 180-day period to apply to a party who received actual notice of the judgment.

In earlier times, the time for filing a notice of appeal was 60 days from the entry of judgment; notice was not required. Thus, the time could easily slip away without the aggrieved party realizing that judgment had been entered. The harshness of this rule was eliminated in 1965 by the revision of rule 2(a). (See generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 379, 380, pp. 381-382.) Now the 60-day period starts upon *notice* of entry of judgment; the time period is extended to 180 days if no notice is given. (Cal. Rules of Court, rule 2(a).)

Here, appellant received notice that judgment had been entered in the form of a filed copy of the trial court's order. The 60-day period did not transpire without her awareness that judgment had been entered. Yet, she did not file her notice of appeal until the 114th day. In my view, she is able to avoid the conventional sanction for such tardiness only because of the confusion which presently exists in the language of rules 2(a) and 309 of the Rules of Court.

Rule 2(a) provides two methods by which notice may be given so as to start the shorter 60-day period: "mailing notice of entry of judgment by the clerk of the court *pursuant to section 664.5 of the Code of Civil Procedure*" (italics added) or service of such notice by a party. In the days when court clerks were required to give notice of entry of every appealable order, this language assured that the 60-day period would apply in the normal case. Today, however, in light of the Legislature's revision of section 664.5, the former method is virtually obsolete. Because the superior court clerks no longer mail notices of entry of judgment, the 60-day period now comes into

play only when service of the notice of entry of judgment is made by a party.[1]

A notice of entry of judgment has a useful purpose only when the parties are unaware of the judgment—i.e., when the matter has been taken under submission. Yet, under the rules as presently written, a notice of the ruling on a submitted matter from the court clerk will not start the 60-day period running. Rule 309 imposes an affirmative duty upon court clerks to notify the parties of the ruling on matters taken under submission. But the rule then declares, inexplicably, that such notice does not qualify as notice of entry of judgment unless "the clerk is required to give notice pursuant to Code of Civil Procedure section 664.5." Now that section 664.5 has been revised by the Legislature to eliminate the requirement that superior court clerks give notice, the language of rule 309 emasculates the 60-day rule. As demonstrated in the present case, because the clerk's notice of judgment is no longer "required" by section 664.5, a party who receives such notice has 180 days in which to file an appeal even though the party has actual notice of the entry of judgment.

In short, I believe rules 2(a) and 309 fail to account for the Legislature's changes in section 664.5 of the Code of Civil Procedure. I would therefore urge the Judicial Council to consider remedial changes to correct this oversight and to conform rules 2(a) and 309 to the underlying objective of providing a 60-day appeal period to parties with actual notice of the entry of judgment.

**ELKINGTON, J.**—I dissent.

I am of the opinion that the time for taking an appeal commences to run from "actual service of a filed copy of the order appealed from" by the clerk, as was here effected, and, *Pacific City Bank* v. *Los Caballeros Racquet & Sports Club, Ltd.* (1983) 148 Cal.App.3d 223, 227 [195 Cal.Rptr. 776], notwithstanding, that the trial court's intent "to provide notice to the parties" is immaterial. The notice of entry of the order required by law had here been substantially complied with. "Substantial compliance expresses a rule of interpretation which derives from general maxims of equity—that substance governs over form, that no one is required to perform an idle act. (Civ. Code, §§ 3528, 3532.) Hence if the essence of a requirement has been met, or if its performance would be superfluous, then the law holds that the requirement has been substantially complied with." (*People* v. *Boone* (1969)

---

[1] There will continue to be infrequent instances when superior court clerks will mail notices of entry of judgment: in dissolution cases and in cases when the trial court so orders. (Code Civ. Proc., § 664.5.)

2 Cal.App.3d 503, 506 [82 Cal.Rptr. 566].) I would dismiss the appeal taken 114 days after "actual service of a filed copy of the order appealed from," as untimely.