[No. D007832. Fourth Dist., Div. One. Jan. 16, 1990.]

COUNTY OF SAN DIEGO, Plaintiff and Appellant, v.
RICARDO ESPARZA SIERRA, Defendant and Respondent.

**COUNSEL**

Edwin L. Miller, Jr., District Attorney, Jeffrey R. Fraser and Brock A. Arstill, Deputy District Attorneys, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

**OPINION**

**HUFFMAN, J.**—The County of San Diego (County), represented by the district attorney's office, appeals from an order of the trial court modifying the amount of child support Ricardo Esparza Sierra must pay monthly for the support of his minor son. County contends the court abused its discretion in granting Sierra a $900 per month hardship exemption and in modifying the support order to an amount below the statutory mandatory

minimum established by the Agnos Child Support Standards Act of 1984 (Agnos Act). (Civ. Code,[1] § 4720 et seq.) We agree and reverse.

## I

### FACTUAL AND PROCEDURAL BACKGROUND

Sierra's minor child was born January 26, 1981. In June of 1982, Sierra entered into a stipulated order with the County setting child support for his child at $40 per month. At that time the child was receiving support from the County in the form of aid to families with dependent children (AFDC).

Because the child continued to receive AFDC, was older and had greater needs, in January 1988 the County filed a motion to modify the 1982 child support order to increase the amount to $311 per month as calculated under the Agnos Act. A hearing for the motion was set for March 9, 1988.

At that time, Sierra appeared in propria persona and submitted an income and expense declaration in response to the motion.[2] The declaration showed his disposable income then to be $1,400 per month. After questioning him about the amounts, however, the court specifically found his net disposable income was $1,311 per month.[3] The court also queried him about his expenses.

In response, Sierra stated he was supporting his parents and a brother and sister. His father was retired and his mother and siblings did not work; all lived in the same house with him. His father received $400 a month retirement pay but Sierra paid for the rent on the house and for food and utilities. He also made payments of $524 a month on outstanding loans, paid $119 a month for insurance on his truck, paid medical insurance for his child and bought his child clothes each payday. His brother and sister were going to school.

The deputy district attorney, Brock Arstill, pointed out to the court that based on the net income of $1,311, the Agnos Act minimum would be $235 per month. Whereupon the court expressed the view Sierra could not pay such an increase in child support because he was "providing a home for his

---

[1] All statutory references are to the Civil Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

[2] Sierra's income and expense declaration is contained in the superior court file (San Diego Super. Ct. case No. 487915) of which we take judicial notice. (Evid. Code, § 452(d).)

[3] The clerk's minutes of the hearing signed by the trial court judge show Sierra's net income per month as $1,311.05.

mother and father, and two brothers,[4] who are unemployed, and there is only an income of $400 from his father's retirement . . . ." The court determined the child support would remain the same: $40 a month.

Arstill then inquired whether the court was finding a hardship deduction and, if so, "what exactly is that hardship deduction for and how much is the Court finding as [one]?" The court guessed the hardship deduction would be "somewheres in the neighborhood of $700 for his parent[s]." Arstill advised the court that under that determination, Sierra would have a net disposable income of $600 per month and under the Agnos Act would be required to pay $180 per month in child support.

The following colloquy then transpired:

"THE COURT: Well, let's make it $900 hardship then. How much do I have to get down to make it $40?

"MR. ARSTILL: Just clarifying for the record, your Honor.

"THE COURT: I understand. If we make it $900 what does that bring it to?

"MR. ARSTILL: That would leave it at $400, that would probably do it. That would be an Agnos [Act] figure of $72 a month.

"THE COURT: Well, that is as much as I could go."

The court clarified that the hardship deduction was for Sierra's parents and siblings and thereafter entered an order setting child support at $72 per month. The court in granting the $900 hardship deduction reasoned that "[if Sierra] doesn't support the family, the mother, the father, and the two brothers are going to end up being supported by the county instead of the mother and child."

The support order also required Sierra to provide health insurance for his son and specified the $72 would go to Revenue and Recovery through wage assignment.

The County filed a timely appeal from the order modifying child support.[5]

---

[4] The trial court inadvertently identified Sierra's brother and sister as two brothers.

[5] Sierra was given notice of the appeal and properly served with the briefs. He was notified by this court his failure to respond would result in the appeal being submitted without a response, pursuant to California Rules of Court, rule 17(b). Sierra filed no response.

Therefore, pursuant to that rule, we have accepted the facts stated in County's brief as true. (*Bedi* v. *McMullan* (1984) 160 Cal.App.3d 272 [206 Cal.Rptr. 578].)

## II

### DISCUSSION

■ The County contends the trial court abused its discretion in granting Sierra a hardship deduction, thereby reducing his child support order below its statutory minimum.[6] In support of this contention the County cites the plain language of the Agnos Act and two cases interpreting the types of hardships allowed for reducing child support below the statutory minimum, *In re Marriage of Kepley* (1987) 193 Cal.App.3d 946, 952 [238 Cal.Rptr. 691] and *In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047 [237 Cal.Rptr. 770]. The County specifically argues the legislative enactment and cases do not provide for a "hardship" deduction for the voluntary support Sierra provides for his parents and siblings, that the trial court abused its discretion in finding one, and that the Agnos Act limits the authority of a trial court to set hardship deductions except where specifically authorized by statute. We agree.

■ Preliminarily we note the trial court's determination to grant or deny a modification of a support order will ordinarily be upheld on appeal unless an abuse of discretion is demonstrated. (*In re Marriage of Kepley, supra,* 193 Cal.App.3d at p. 951; *In re Marriage of Norvall, supra,* 192 Cal.App.3d at p. 1051.) Moreover, nothwithstanding the fact Sierra failed to file an appellate brief, we will only reverse if prejudicial error is found based on that abuse of discretion after examining the record on the basis of the County's brief. (*Warford* v. *Medeiros* (1984) 160 Cal.App.3d 1035 [207 Cal.Rptr. 94].)

■ The Agnos Act was enacted to promote fair and adequate child support awards throughout the state of California and to avoid substantial variation of those awards among similarly situated families. (§ 4720(d); *In re Marriage of Kepley, supra,* 193 Cal.App.3d at p. 951.) In furtherance of its intent, the act provides for a system of standards and procedures which

---

[6] In cases like this where the County provides AFDC to custodial parents, when the noncustodial parent's support payments fall below the mandatory minimum levels, the County has the right and the obligation to pursue further support from the noncustodial parent. (See *County of Contra Costa* v. *Lemon* (1988) 205 Cal.App.3d 683, 689 [252 Cal.Rptr. 455].) The amount of mandatory minimum child support that a noncustodial parent should pay and the standard of need established for AFDC payments are interrelated. (See §§ 4720(d), 4722(a)-(c); Welf. & Inst. Code, § 11452.) Because of this connection, it is reasonable to employ the same standards for calculating the amount of future child support obligations and reimbursement of AFDC payments. (*County of Contra Costa* v. *Lemon, supra,* 205 Cal.App.3d at p. 689.)

are used by the courts in determining a mandatory minimum award of child support in each case. (§ 4720(a), (b) and (d).) Absent exceptional circumstances, this mandatory minimum child support must be awarded. (§ 4720(d) and (e).)[7]

The mandatory minimum child support is determined pursuant to a standard formula (§ 4722) which calculates each parent's annual gross income (§ 4721(a)) and deducts specified items to obtain the "annual net disposable income." (§ 4721(c).) The act also takes into consideration the financial abilities of each parent to provide support. (§ 4720(d).) Consistent with this consideration of the parent's financial ability to pay, section 4725 provides for income deductions for "extreme financial hardship."[8]

In considering a claim of extreme financial hardship based on business losses, the court in *In re Marriage of Norvall, supra,* 192 Cal.App.3d 1047, held because "[s]ection 4725 allows a deduction for extreme financial hardship when it is due to 'justifiable expenses resulting from the circumstances

---

[7] As this court recently noted in *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1372, footnote 3 [263 Cal.Rptr. 243], "Clearly the intent of the Legislature is not to allow support levels so onerous that the parent falls below the poverty level. 'While section 4725 requires the court to remember the underlying goals of the Agnos Act, it also provides that a court shall not order a child support award that would have the effect of reducing a parent's net income to an amount less than that established as the minimum necessary for a person under the AFDC Program.' [Citations.]"

[8] Section 4725 provides in pertinent part: "In the event that a parent is experiencing extreme financial hardship due to justifiable expenses resulting from the circumstances enumerated in this section, upon the request of a party, the court may allow such income deductions as may be necessary to accommodate those circumstances, in addition to the deductions specified in subdivision (c) of Section 4721. [¶] (a) Circumstances evidencing hardship include the extraordinary health expenses for which the parent is financially responsible, and uninsured catastrophic losses. [¶] (b) Circumstances evidencing hardship also include the minimum basic living expenses of either parent's natural or adopted children for whom the parent has the obligation to support from other marriages or relationships who reside with the parent. The court, upon its own motion or upon the request of a party, may allow such income deductions as are necessary to accommodate these expenses after making the deductions allowable under subdivision (a) of this section. Unless there are exceptional circumstances as provided under subdivision (e) of Section 4720 or as otherwise provided in this subdivision, when the court makes a child support award in accordance with the mandatory minimum amount of child support provided under this act, the maximum hardship deduction for each child who resides with the parent may equal, but shall not exceed, the support awarded each child subject to the order . . . . [¶] (c) If deductions for hardship expenses are allowed, the court shall state on the record the reasons supporting the deductions, cite the documentation of the underlying facts and circumstances, and specify the amount of deductions allowed. Whenever possible, the court shall specify the duration that any deduction shall be in effect. [¶] (d) Upon considering whether to allow a deduction under this section, and in determining the amount of any such deduction, the court shall be guided by the goal s set forth in the expression of legislative intent set forth in this chapter. [¶] (e) The court shall not order a child support award that would reduce a parent's net income to an amount less than that established for the needs of one person by Section 11452 of the Welfare and Institutions Code, as annually adjusted by Section 11453 of that code."

enumerated in *this* section . . . [,] the plain language of section 4725 limits the type of expenses that may be deducted as hardship expenses to those specifically enumerated within its provisions." (*Id.* at pp. 1056-1057.) Thus, while recognizing the trial court had broad discretion in dealing with support modifications, the court there concluded hardship deductions were limited by the restrictive language of section 4725. The court thus denied the husband in that case a deduction from his income for business losses. (*Id.* at p. 1057.)

Likewise, in *In re Marriage of Kepley, supra*, 193 Cal.App.3d 946, it was held that considerations of factors by the trial court there which were not within the plain language of section 4725 were "not appropriate in determining and allocating the mandatory minimum." (*Id.* at p. 953.) Because the court in *Kepley* had considered such factors, the appellate court reversed and remanded for redetermination under the Agnos Act. (*Id.* at p. 954.) In doing so, the appellate court cautioned that while discretionary factors used before the enactment of the Agnos Act are still proper for determining whether to award an amount greater than the mandatory minimum (§ 4724), such factors are not proper in determining the minimum amount. (*Id.* at p. 953.)

Here, Sierra was given a hardship deduction for the voluntary expenditures he made to support his parents and two unemployed siblings. Such, however, are not obligations that fall within the definition of "extreme financial hardship" contemplated by the Legislature when it enacted section 4725.[9] Nor is there any legal obligation on Sierra's part, based on this record, to support his family other than his own child. There is simply nothing within the language of section 4725 that permits a deduction for these expenses.

In a sense, the trial court recognized as much when it explained the reasons for classifying the expenses as a financial hardship for the deduc-

---

[9] When the Legislature in 1984 considered enacting section 4725, one version of the Assembly bill reviewed proposed extreme financial hardship not be limited to the circumstances enumerated in that section. This version read in pertinent part: "In the event that a parent is experiencing extreme financial hardship due to justifiable expenses resulting from, but not limited to, the circumstances enumerated in this section, . . . ." (Assem. Bill No. 1527 (1983-84 Reg. Sess.) amended May 1, 1984.)

This version was rejected and the words "but not limited to" were stricken from the final amendments of the bill before its passage. (Assem. Bill No. 1527 (1983-84 Reg. Sess.) amended June 21, 1984, and Aug. 9, 1984.) This is further evidence the Legislature did not contemplate circumstances not listed in section 4725 to qualify for a hardship deduction. "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision." (*Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 607 [45 Cal.Rptr. 512].)

tion: "THE COURT: If he doesn't support the family, the mother, the father, and the two brothers are going to end up being supported by the county instead of the mother and child.

"So, he is doing the best he can here."

In effect, the trial judge backed into a hardship calculation in order to accomplish what he thought to be a just result; because the County would be burdened in this case with the support of one family or the other, things should remain essentially in the status quo.

While we are sympathetic with the trial judge who must carry out the mandatory legislative guidelines for child support when that judge is dealing with a person of limited financial means, we cannot sanction a result-oriented "hardship" not within the language or meaning of section 4725. On this record, we thus conclude the trial court abused its discretion in determining Sierra was entitled to a hardship deduction for the voluntary support of his parents and his two unemployed siblings.

Accordingly, the order appealed from must be reversed.

### DISPOSITION

The order modifying child support is reversed and the matter is remanded for redetermination under the provisions of the Agnos Act.

Kremer, P. J., and Todd, J., concurred.