[No. D017178. Fourth Dist., Div. One. Dec. 14, 1994.]

COUNTY OF SAN DIEGO, Plaintiff and Appellant, v.
GUY C., Defendant and Respondent.

## COUNSEL

Edwin L. Miller, Jr., District Attorney, and Jeffrey D. Weeland, Deputy District Attorney, for Plaintiff and Appellant.

Lee W. Selvig for Defendant and Respondent.

## OPINION

**HUFFMAN, J.**—The County of San Diego (County) appeals an order of the superior court in its action for reimbursement of aid to families with dependent children (AFDC) moneys paid on behalf of the minor child of respondent Guy C. (Guy) for out-of-home placements pursuant to a judgment of dependency. (Welf. & Inst. Code, §§ 300, 11350.) In making its order for child support, the trial court reviewed the dependency file involving Guy's minor daughter, Christine (the minor), and ruled that the family history shown by the dependency file qualified as "special circumstances in the particular case" within the meaning of former California Rules of Court,[1] rule 1274(e)(8), which justified departure from the guideline amounts of child support otherwise payable by parents. The trial court thus set the amount of support payable by Guy at $200 per month toward the past support paid beginning February 1990, although the guideline amounts set by then applicable law would have been from $1,140 to $1,173 per month.

On appeal, the County contends this ruling was an abuse of discretion because the minor's developmental history should not have been considered to be a "special circumstance" to allow departure from guideline amounts of child support due. The County also argues that under former rule 1274(h) the support amount ordered should not have been less than the minimum "floor" amount which would have been allowed by the formerly effective Agnos Act, which in this case would have been $341 per month. (The Agnos Child

---

[1]All rule references are to the California Rules of Court.

Support Standards Act of 1984, former Civ. Code, §§ 4720 et seq., 4720.1, subd. (a)(1), repealed by Stats. 1990, ch. 1493.)[2]

Applying the law in effect at the time that the superior court made its rulings, and noting where pertinent how that law has been superseded, we conclude that the superior court abused its discretion in concluding that the family and dependency history involved here constituted "special circumstances" which justified departure from applications of child support guidelines. (Former rule 1274(e)(8).) Further, we determine that the matter must be remanded for a new calculation of the support payments due as reimbursement to the County, once the applicable "floor" amount is set according to former rule 1274(h), and for clarification of the applicable support period.

### FACTUAL AND PROCEDURAL BACKGROUND

Guy and his wife (not a party to this action) adopted their minor child, born in 1977, when she was three and one-half years old. In February 1990 a dependency proceeding was initiated when the minor complained of abuse in the home. (Welf. & Inst. Code, § 300.) A number of out-of-home foster, institutional, and hospital placements ensued from February 1990 until November 1991, when a delinquency case was initiated for the minor under Welfare and Institutions Code section 602. According to the opening brief, AFDC foster care moneys totaling $50,800.34 were paid by the County on behalf of the minor between February 1990 and December 1991.

In April 1991 the County filed its complaint for support against Guy, alleging the minor was in placement with a caretaker and the County was entitled to reimbursement for AFDC public assistance paid by the County on the minor's behalf. (Welf. & Inst. Code, § 11350.) An order to show cause and application for order requested ongoing child support of $904 per month or more, retroactive to February 1990. The hearing on the order to show cause was initially set for May 30, 1991, at which time Guy, through his attorney, filed a declaration requesting that the court ruling on the support matter should make reference to the minor's juvenile dependency record file. A number of continuances ensued, showing some confusion as to whether any ruling on the propriety of reference to the dependency file had ever been made, and the matter was ultimately heard in March 1992 before juvenile court referee Dumanis, sitting as temporary judge.

At the hearing, the County requested that the issues be limited to the parents' ability to pay both ongoing and reimbursement amounts of support for the AFDC expenditures. Information about their ability to pay was

---

[2]All statutory references are to the Civil Code unless otherwise specified.

presented. December 1991 ended the period for which recovery was sought, as the County and the court understood that a different action would be required to cover the expenses of maintaining the minor in juvenile hall under the delinquency proceedings. (Welf. & Inst. Code, § 903.) The parties agreed and the court ruled that the entire juvenile court file could be reviewed by the court without prejudice to either side. The court found that the dependency court file contents were relevant to an assessment of the repayment of AFDC funds, but declined to make a ruling as to the propriety or correctness of the juvenile court's placement of the minor in foster care.

At a continued hearing, the superior court indicated that it had considered all the factual circumstances of the case after a review of the dependency file. The County clarified that it was seeking retroactive support to be determined by consideration of Guy's earnings during the time that the placements had been effective, February 1990 through December 1991. Under the showing made as to Guy's net income for 1990 ($5,462 per month) and for 1991 ($5,254 per month), the guideline levels of support were calculated by the County for 1990 as $1,173 per month and for 1991 as $1,140 per month. These guideline calculations were uncontroverted. The County thus requested those guideline amounts be ordered.

Guy responded through his attorney that the court should use equitable considerations and view the guideline simply as a guideline, and order the family to pay nothing. He urged the court to put an end to litigation in the matter by making a favorable support order, and suggested that the matter would have to go further if no such order were made.

In making its ruling on the support request, the court made reference to a number of facts obtained from the juvenile court file.[3] The court stated that these factors weighed heavily on behalf of mitigating the normal payment due from the minor's parent. Specifically, the court referred to the fact that the minor was adopted at the age of three and had a number of health and adjustment problems prior to the time of adoption, which were not made clear to the adoptive parents at that time. It later became clear that the types of problems that the minor had (i.e., being small in stature, doing unusual things, being manipulative, a liar, and remorseless) were consistent with her having been born addicted to some narcotic substances. By 1990, when the minor came to the attention of the County child protective services, the parents were having problems in controlling the minor, partially related to

---

[3]The juvenile court file has not been made a part of the record on appeal, and we decline to augment the record to add that file to our record as suggested by the appellant. (Rule 12(a).) Review of the trial court's detailed order and the reporter's transcripts is adequate for purposes of this appeal.

her tendency to lie. The court noted that the dependency placements based on the minor's allegations of abuse (later discredited) resulted in the minor getting worse in custody. The court concluded that the minor had come before the juvenile court with serious emotional disorders inflicted on her by her natural parents, not her adoptive parents. Since the adoptive parents had done everything in their power to assist the minor from the time of adoption, and because they were initially prosecuted as opposed to being helped because of the minor's (discredited) allegations of abuse, the court found there were equities in this case which existed and required the court to stray from the child support guidelines. Accordingly, the court orally ordered support of $200 per month to be paid, retroactive from February 1990 through December 1991, in addition to amounts already being paid by Guy ($200/mo.) for counseling for the minor.

In response to this oral ruling, the County's representative requested that specific findings be made to justify the ruling under former rule 1274, both as to the reasons for departure from the guideline and for a failure to order the minimum support amount mandated by the Agnos Act. The court complained that it had not been previously apprised of this rule, took the matter under submission, and issued a detailed written order shortly thereafter. This order stated that pursuant to former rule 1274(e), the presumption provided by the rule had been rebutted by facts showing that the application of the support guidelines would be unjust and inappropriate due to the special circumstances of this particular case. The court then recited background facts already summarized in its oral ruling (the minor's behavioral problems from the first, such as cruelty to the family dog and insects, destruction of property, constant lying and stealing, and a general lack of remorse), and added that "[t]ime, indeed, proved that [the minor] was manipulative, had a lack of remorse, was cruel, unable to socially adjust to peers and had manifestations of sociopathic behavior." The court then ordered, in addition to the $200 per month being paid for counseling for the minor, that Guy pay an additional $200 as a reasonable support order to be paid to the County for the past support obligation beginning February 1990 and continuing while the minor was out of the home or until further order of the court. The court then sealed its findings and transcripts for confidentiality; the full order has been provided to this court through augmentation of the record. (Welf. & Inst. Code, § 827; rule 12(a).) The County timely appealed the order.

DISCUSSION

 Awards of child support are reviewed for abuse of discretion. (*County of Lake* v. *Antoni* (1993) 18 Cal.App.4th 1102, 1105 [22 Cal.Rptr.2d

804].) The County argues the superior court abused its discretion in finding under former rule 1274(e)(8) that the "special circumstances" of this case allowed departure from child support guidelines. In a related argument, the County contends the court erred in ordering a support amount less than the minimum that would have been established by the Agnos Act, according to former rule 1274(h). To analyze these claims, we apply the law in effect at the time the superior court made its ruling. (*In re Marriage of Dade* (1991) 230 Cal.App.3d 621, 633 [281 Cal.Rptr. 609].) Child support is an area of fast-changing law, and we will indicate, where appropriate, the successor sections (generally found in the newly created Family Code) to the rules and statutes as briefed and argued by the parties.

I

*Applicable Law and Contentions on Appeal*

At the time of this hearing, former rule 1274 provided child support guidelines, as mandated by former section 4720.1, by establishing a formula and requiring findings for determining the guideline amount of child support to be ordered under the rule.[4] Rule 1274(d) provided that there was a rebuttable presumption affecting the burden of proof that the amount of child support established by the rule was the correct amount to be awarded. Under subdivision (e) of the rule, the presumption could be rebutted by facts showing that application of the guidelines would be unjust or inappropriate in the particular case because specified factors applied and the revised amount of support was found not detrimental to the best interests of the child. Former rule 1274(e)(2) defined hardships as those defined by former section 4725 (part of the Agnos Act), and applicable published appellate decisions. In turn, former section 4725 set forth the definition of extreme financial hardship to a parent which justified making income deductions in calculating the parent's net income in order to accommodate those circumstances (e.g., extraordinary health expenses, uninsured catastrophic loss, and minimum basic living expenses of other supported children). (Former § 4725, repealed by Stats. 1990, ch. 1493.)

Another factor rebutting the presumption that the guideline amount was proper was set forth in former rule 1274(e)(8): "Application of the guideline would be unjust or inappropriate due to special circumstances in the particular case. The court shall state on the record the facts constituting the special

---

[4]The drafter's note to rule 1274, indicating its repeal in 1994, was that these changes in family law rules were made to comply with recent legislation, including changes enacted by the adoption of the Family Code. (Deering's Ann. Code, Cal. Rules of Court (1994 pocket supp.) p. 167.)

circumstances." The meaning of the term "special circumstances" in this context is unclear, as no statutory or rule definition is provided.[5] In its reply brief, the County concedes that special circumstances may be considered to be a broader concept than financial hardship (as in rule 1274(e)(2)), but argues that family background or a child's dependency history nevertheless does not constitute allowable special circumstances to be considered in setting a child support obligation. The County reasons as follows: Under former section 4720.1, subdivision (a)(2), the Legislature clearly stated its intent that the rules established by the Judicial Council to set guidelines for child support should be adhered to in most circumstances and departed from only in "exceptional circumstances." (Former § 4720.1, subd. (a)(1), repealed by Stats. 1992, ch. 46, operative July 1, 1992; for similar provisions operative Jan. 1, 1994, see Fam. Code, §§ 4050-4052, 4066-4067; see 12A West's Ann. Civil Code (1994 pocket pt.) Historical & Statutory Notes to former § 4720.1, p. 43.) In former section 4720.1, and in current Family Code section 4053, subdivision (a), the Legislature set forth the principle that "[a] parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life."

Similarly, where the government is supporting a parent's child, the parent has to reimburse the government, subject to the applicable statute of limitations and the parent's ability to pay. (*In re Marriage of Hyon & Kirschner* (1991) 231 Cal.App.3d 449, 452 [282 Cal.Rptr. 408]; Welf. & Inst. § 11350, subds. (a)(2), (c).) A parent's liability for state-furnished support commences with the payment of AFDC benefits. (*In re Marriage of Hyon & Kirschner*, *supra*, at p. 454.) As a preliminary observation, we note that these support obligations do not distinguish between adoptive and natural parents. No action had been brought in this case by Guy and his wife to set aside the adoption of the minor child. (Fam. Code, § 9100 et seq. [former § 228.10]; *Adoption of Kay C.* (1991) 228 Cal.App.3d 741 [278 Cal.Rptr. 907].) Both natural and adoptive families can be touched by hardship and tragedy, such as occurred in this case.[6]

At the hearing, the County maintained that behavioral issues of the child should not affect the decision on taxpayer reimbursement. The County goes on to argue that even though special circumstances can be distinguished from financial hardship factors, special circumstances are still intended by the Legislature to be primarily economic in nature, rather than including

---

[5]Current Family Code section 4057, subdivision (b)(5) states that "special circumstances include, but are not limited to," parental time-sharing arrangements, housing expenses, and special medical or other needs requiring further child support. These are primarily economic in nature. Former rule 1274 did not include any such definitions.

[6]"How sharper than a serpent's tooth it is to have a thankless child!" (Shakespeare, King Lear, act I, scene iv, line 312 [Lear speaking of his natural children].)

personal and family history factors. Former section 4720.1, subdivision (a)(2) required that the guidelines set for support should be departed from "only in exceptional circumstances." Several cases interpreting prior similar versions of child support statutes narrowly construed hardship exceptions to child support guidelines; the County argues that special circumstances should be similarly narrowly construed. For example, in *County of San Diego v. Sierra* (1990) 217 Cal.App.3d 126, 130-133 [265 Cal.Rptr. 749], this court accepted the County's arguments that voluntary support provided by a parent for his own parents and siblings did not provide grounds for a hardship deduction under the Agnos Act. We thus found the trial court abused its discretion in allowing such a hardship deduction from the parent's net income for support provided his adult relatives. (*Ibid.*)

In *In re Marriage of Hanchett* (1988) 199 Cal.App.3d 937, 942-944 [245 Cal.Rptr. 255], the court interpreted the Agnos Act as requiring that child support must be awarded at least at the mandatory minimum level, and discretionary factors such as the child's need and the parent's ability to pay could not be used to determine and allocate the mandatory minimum amount, although they could apply in awarding an amount greater than the mandatory minimum. (See also *In re Marriage of Kepley* (1987) 193 Cal.App.3d 946, 951-953 [238 Cal.Rptr. 691].) The court thus found that these discretionary factors did not qualify as exceptional circumstances which justify departure from the guidelines as to mandatory minimums. (Former §§ 4720, subd. (e), 4725.)

Thus, by comparing the hardship deductions with the general "special circumstances" language of former rule 1274 (e)(8), the County argues that a broad interpretation of special circumstances to include family or dependency case history will open the door in the child support proceeding to a great deal of new and irrelevant evidence regarding the parties' personalities and transgressions, and will essentially require relitigation of highly charged underlying dependency or family law matters in an independent child support action. In this context, the County notes that Welfare and Institutions Code section 11350.1 forbids joinder of related actions to child support proceedings. The County further argues that using child support orders as remedial measures for wrongs suffered in other independent proceedings is contrary to the intent of the child support legislation.[7]

---

[7]In this context, the County contends that a procedurally impermissible rehearing of the dependency matter was allowed in this case, when the trial court agreed to review the entire dependency file. Because of the conclusions we reach concerning abuse of discretion in the interpretation of this "special circumstances" provision, we need not address the evidentiary problems raised by wholesale review of a related court file without a clear indication of the manner in which judicial notice is taken, collateral estoppel is applied, and/or evidence from

## II

### *Analysis*

█ We are mindful that several recent appellate opinions have taken pains to emphasize that under the current child support statutory scheme, trial courts retain a measure of discretion to interpret the "special circumstances" language of former rule 1274(e)(8) and current Family Code sections 4052, 4053, subdivision (k), and 4057, subdivision (b)(5). (See *County of Lake v. Antoni, supra,* 18 Cal.App.4th at pp. 1105-1106; *In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1040-1044 [31 Cal.Rptr.2d 749]; *Estevez v. Superior Court* (1994) 22 Cal.App.4th 423 [27 Cal.Rptr.2d 470]; see Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1994) §§ 6:151, pp. 6-35-6-36, 6:262, p. 6-60.)[8] While we agree with this general concept, we nevertheless conclude that the trial court's discretion was abused here in a number of respects. First, although Guy and his wife never sought to rescind the adoption of the minor, the trial court placed great emphasis on the problems they had with this adoptive child, to the effect that the adoptive parents had not gotten what they bargained for and, in essence, the minor could be analogized to a defective product. Although the adoptive parents did not contest the out-of-home placement for the minor in the dependency matter, they represent that they consistently stood by her and attempted to help her throughout the proceedings. Unfortunately, neither a natural or an adopted child comes with a warranty of merchantability, and life may visit tragedies and hardships equally upon both natural parents and adoptive parents. The trial court lost sight of the basic duty of any parent to support his or her child in its eagerness to provide some kind of compensation for the suffering that these adoptive parents had gone through in connection with the adoption and the dependency proceedings.

Second, this record contains references to a potential action that Guy considered bringing against the County for alleged wrongs suffered due to the County's conduct of the minor's dependency proceedings. However, rather than requiring Guy and his wife to pursue an independent action for such alleged damages, the trial court sought to use the support proceedings

---

the other file is admitted to the child support proceeding. (See *In re Rocco M.* (1991) 1 Cal.App.4th 814, 819 [2 Cal.Rptr.2d 429]; see 1 Witkin, Cal. Evidence (3d ed., 1994 supp.) Judicial Notice, § 102, p. 41.)

[8]In his respondent's brief, Guy relies on former section 4720, subdivision (a)(3)(k), setting forth statewide uniform child support guidelines, as supporting a broad grant of discretion to the trial courts in this area. However, that precise section did not go into effect until September 22, 1992, whereas these hearings were held in March 1992, and the order issued in May 1992. That section was repealed and reenacted in the Family Code. (Fam. Code, § 4050 et seq.) Reference to that section is not instructive under these circumstances.

to provide a remedy for those perceived wrongs. In effect, the trial court was penalizing the County for dependency-related actions taken by its department of social services and its attorneys, by making this order in a separate proceeding prosecuted by another public agency pursuant to statutory mandate, i.e., the district attorney. (Welf. & Inst. Code, § 11350 et seq.) This was an abuse of discretion, even disregarding the fact that not all of the participants in the dependency proceeding were before the court in the support proceeding. (See fn. 7, *ante.*)

Further, the trial court's seven-page order setting support at $200 per month, in addition to the $200 being paid for counseling, recites and relies on background facts going back to the minor's infancy and early childhood as justification for a reduced support obligation in the present. The trial court abused its discretion in blaming the minor for bad acts committed in her infancy and in using those bad acts (pulling the wings off of insects, being cruel to the family dog, purposeful urination in her bed) to characterize the teenage minor as unworthy of parental support. The question before the court was whether the parents should reimburse the public entity for public funds expended in support of this minor, and these family history factors are too subjective and too remote from the parental support obligation to justify departure from the guideline support amounts. Even if the minor is properly now to be characterized as manipulative, lacking remorse, cruel, maladjusted, and sociopathic (as the trial court found), there is no justification for the trial court seeking to hold the public primarily liable, without regard to the parents' ability to pay, for the expense of placement of the minor in dependency out-of-home facilities.[9]

Moreover, the trial court abused its discretion in disregarding the then-effective provisions of former rule 1274(h), requiring that the amount of support ordered should not fall below the minimum amount mandated by the Agnos Act. (Former § 4720, subd. (d).) The order required Guy to pay $200 as a reasonable support order to the County for the past support obligation, beginning February 1990 and continuing while the minor was out of the home or until further order of the court. The order is unclear as to whether only a portion of the February 1990 through December 1991 arrearages was payable, or whether an ongoing support obligation while the minor was out of the home, or until further orders, was intended. Conditioning reimbursement on the minor currently being out of the home makes no sense. The matter must be remanded for a redetermination of a proper level of support to apply to the arrearages for the period from February 1990 through

---

[9]As noted above, the County did not seek in this action AFDC reimbursement for expenditures for the minor's placement pursuant to her delinquency proceedings, as opposed to her dependency proceedings. (Welf. & Inst. Code, § 903.)

December 1991, as well as a clarification of whether any ongoing support obligation was also ordered. This minor child will not reach the age of 18 until sometime in 1995, and, as of the time this matter was briefed, her whereabouts were unknown. The trial court must take all of the relevant circumstances into account in fashioning a new order in accordance with the principles set forth in this opinion.

Because of the conclusions reached above, we need not address Guy's backup arguments that equity justified the trial court's support order because statutory analysis is inadequate to resolve this case. To the contrary, statutory and rule analysis is the only approach which may properly be used in this highly regulated area. (See *In re Marriage of Fini, supra,* 26 Cal.App.4th at p. 1042 ["The Legislature has adopted a detailed and relatively inflexible child support statutory scheme much akin to the Internal Revenue Code."].) In conclusion, while the scope of the "special circumstances" which justify a departure from support guideline amounts was not very clearly defined by the Legislature or the Judicial Council, and is thus subject only to abuse of discretion analysis, we are confident that the scope of "special circumstances" is not so broad as to allow the particular noneconomic family background factors and dependency history which were considered here.

DISPOSITION

The order is reversed with directions to recompute the support amount of reimbursement due in conformity with former rule 1274, including its minimum support provision, and to clarify if any ongoing support is due.

Kremer, P. J., and Benke, J., concurred.