[No. F024647. Fifth Dist. Nov. 12, 1997.]

COUNTY OF STANISLAUS, Plaintiff and Appellant, v.
TERRY D. GIBBS, Defendant and Respondent.

## Counsel

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and Mary J. Hamilton, Deputys Attorneys General, for Plaintiff and Appellant.

Peter Koulouris for Defendant and Respondent.

## Opinion

## WISEMAN, J.—

### Introduction

In California there is a "statewide uniform guideline for determining child support orders." (Fam. Code,[1] § 4055, subd. (a).) This guideline is an algebraic formula. (*Ibid.*) The intention of the Legislature in adopting the uniform guideline was "to ensure that this state remains in compliance with federal regulations for child support guidelines." (§ 4050.) The court may depart from the guideline only in "special circumstances" set forth in the child support statutes. (§ 4052.) "[W]hen ordering child support the trial court lacks discretion to vary from the presumptively correct amount, calculated by applying the algebraic formula in the statute, unless one or more of the statutorily enumerated rebuttal factors is found to exist." (*In re Marriage of Carter* (1994) 26 Cal.App.4th 1024, 1026 [33 Cal.Rptr.2d 1].) Application of the guideline has resulted generally in a "significant increase in the

---

[1]All statutory references are to the Family Code unless otherwise noted. Since we find it unnecessary to rely on the supplementary authorities submitted by appellant on September 15, 1997, respondent's objection to the untimeliness of their submission is moot.

proportion of the payor's income now ordered for child support . . . ." (*In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1043 [31 Cal.Rptr.2d 749].)

There is a rebuttable presumption that the statewide uniform guideline formula amount is the correct amount of child support to be ordered. (§ 4057.) The presumption can be rebutted by showing that application of the formula "would be unjust or inappropriate in the particular case . . . ." (*Ibid.*) For example, the statewide uniform guideline formula amount need not be applied when the parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children. (§ 4057, subd. (b)(3); *Estevez* v. *Superior Court* (1994) 22 Cal.App.4th 423 [27 Cal.Rptr.2d 470] [guideline formula need not be applied when payor's income was not less than $1.4 million for each of the previous three years]; see also *County of Lake* v. *Antoni* (1993) 18 Cal.App.4th 1102, 1105-1106 [22 Cal.Rptr.2d 804] [court has discretion to reduce the amount of child support below presumptive amount in statute where the court finds that application of the statutory formula would be unjust].)

If the court determines that the statewide uniform guideline formula amount would be unjust or inappropriate in a particular case, the court must state "in writing or on the record" the reasons why the amount of support ordered differs from the guideline amount. (§ 4056, subd. (a)(2).) The court must also state in writing or on the record the amount of support that would have been ordered under the guideline formula. (§ 4056, subd. (a)(1) [but see *Estevez* v. *Superior Court, supra,* 22 Cal.App.4th 423, and *In re Marriage of Fini, supra,* 26 Cal.App.4th at p. 1044].) The court's order is reviewed for an abuse of discretion. (*County of Lake* v. *Antoni, supra,* 18 Cal.App.4th at p. 1105.)

PROCEDURAL AND FACTUAL HISTORY

On February 14, 1995, the County of Stanislaus (County), on behalf of "DESHAUN SMITH" (Deshaun),[2] filed a complaint to establish child support and a parental relationship against Terry D. Gibbs (Gibbs). The complaint alleged Deshaun was born on October 11, 1979, and had been receiving public assistance from the County since August 1, 1994. The County also

---

[2] On appeal, Gibbs claims Deshaun is actually "Deashon." Gibbs does not cite to the record to support this claim, and he has not requested we take judicial notice of any documents which might establish Deshaun's true name. The minor's true name is immaterial to the issue raised on appeal.

filed notice the custodial parent had assigned all rights to support to the County under Welfare and Institutions Code section 11477, subdivision (a).

On March 16, 1995, Gibbs filed an answer denying paternity.

On May 15, 1995, Deshaun's mother filed a declaration stating she and Gibbs had engaged in sexual intercourse which resulted in Deshaun's birth, a male born on October 11, 1979.

On May 17, 1995, Gibbs filed an income and expense declaration in which he indicated he is a parole agent with the California Department of Corrections, and that he had earned $50,000 in the preceding 12 months. He also noted he and his current wife have three children, ages three, five and seven. On that day, blood tests were ordered by the court to determine paternity.

On September 12, 1995, a hearing was held. Gibbs stipulated to paternity of Deshaun. The parties also stipulated the presumptive amount of child support under the guidelines with the correct information used in the "DissoMaster" computer program was $838. Although stipulating to the $838 support obligation, Gibbs argued the court should use its broad discretion to adjust downward from the guidelines due to his large debt and in consideration of the best interests of all his children. In support of this request, Gibbs introduced another version of DissoMaster results based on the incorporation of hardship deductions for Gibbs's three other children. Under this version, the presumptive amount was $485 in support. He urged a support order between $485 and $838.

The County attempted to call the parties as witnesses to establish their standards of living. The court refused to allow testimony on this subject. However, the County was allowed to make an offer of proof that Gibbs is living in a $340,000 home in the Bay area;[3] Deshaun's mother was receiving Aid to Families with Dependent Children (AFDC) for the minor in San Joaquin County even before his birth; and Gibbs's present wife earns $4,166 a month, for a combined household income of over $100,000 a year.

The court ordered Gibbs to pay child support in the amount of $675 monthly, plus $75 monthly toward 14 months of arrearages ($9,450). The court found the presumed guideline support was $838 monthly. The reduction in the support order from the minimum guideline was based on Gibbs's

---

[3]Gibbs did not dispute this offer of proof below. On appeal, he contends his home is actually in the Sacramento area. Again, he provides no citation to the record and does not request us to take judicial notice of any documents which might establish his unsupported claim on appeal.

"large consumer debt which has established over time." The court ruled from the bench as follows:

"THE COURT: Based on the evidence that's been presented and the numbers that have been stipulated to, the Court finds that presumed child support in this case is $838 per month.

"This is a situation where there are several factors which lead this Court to deviate from presumed child support and finding that the amount of presumed child support would be unjust and inappropriate in this case.

"Those factors include the fact that Mr. Gibbs' expenses, consumer debt, et cetera, which has been established over time, guideline child support were ordered, even considering his wife's income—if I were to plug back in what she brings home—I am not certain as I sit here and rough out what I believe his monthly expenses are that they would be able to meet those expenses considering the fact that they have three other children and have had them over the course of time also.

"This is not a case where—I don't know whether it is or it isn't, I'm not going to get into that—but this isn't a case where we have a young child. This is case [sic] where this is a new paternity action and this child is already 15 years old and there has not been a previous order for child support.

"So, considering the Antony type analysis, the Court would deviate based on the debt that Mr. Gibbs currently has. Because, as I see it, his expenses on a monthly basis are in excess of what appears to me to be about 67 to 70—6700 to $7,000 a month. And that's just playing with the numbers from the income and expense declaration and considering other expenses associated with having kids, school, clothes, food for the home, et cetera.

"However—the other thing—factor that I would consider in this case is the fact that mom has no income and is living on AFDC; however, at the same time, I have no evidence in front of me that would indicate that she is incapable of being employed, particularly in consideration, I've got a 15, almost 16-year-old child here. This kid's going to be 16 next year. There's certainly in front of me that would indicate she is unemployable. [Sic.]

"To that extent, I take that into consideration and I also have to take into consideration that I'm really dealing here with four children, not just with one child, as Mr. Gibbs has three other children of his current relationship.

"Ms. WESSELIUS [for County]: Your Honor, I hate to interrupt.

"The mother just informed me that she has a six-year-old in the home as well.

"THE COURT: Six years old. I have a nine-month-old and I work full time every day. It's possible.

"I have heard nothing that indicates . . .

". . . that there is a reason why she could not have been employed or is not employed currently.

"To that extent, I am going to order child support in the amount of $675 a month.

"I think that that amount appropriately takes into consideration the earnings of Mr. Gibbs and what he gives to his current children and at the same time hopefully gets mom off of AFDC.

"And, even if it doesn't, that's—it's, I think, a fair amount of child support given all of the circumstances and is in the best interest of all the children in this case."

Timely notice of appeal was filed by the County.

## DISCUSSION

*The court's reduction of the presumptively correct support amount of $838 to $675 based on high consumer debt was error.*

■ The County contends the court abused its discretion when it made a downward deviation from the presumptively correct guideline support amount on the various grounds articulated. We agree.

■ As noted in the introductory remarks, in fixing the amount of child support the court must adhere to the statewide uniform guidelines except where there are special circumstances. (§ 4052.) In implementing the guideline, the court is required to adhere to certain delineated principles.

(§ 4053.)[4] Given these principles, it is clear the court must examine both parties' circumstances as a whole, and evaluate those circumstances in light of the guideline factors and guiding principles. (See *In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047, 1059-1060 [237 Cal.Rptr. 770] [the judge has "some discretion to adjust awards to reflect how costs are being shouldered by each parent [and] a judge can ensure that an inequitable result does not occur from the purely mechanical calculation of the mandatory minimum award"].)

██ Since Gibbs sought the modification of the presumptively correct child support order, it was his burden to establish application of the formula would be unjust or inappropriate. (§ 4057, subd. (b).) Gibbs failed to meet his burden in the instant case.

Section 4057, subdivision (b)(5) lists examples of the types of special circumstances which may establish the formula would be unjust or inappropriate. None of the listed circumstances are present in this case. ██ However, the possible special circumstances are not limited to the ones that are listed. Thus, depending on the unique circumstances of a given case, the trial court has discretion to find special circumstances which would

---

[4]Section 4053 provides:

"In implementing the statewide uniform guideline, the courts shall adhere to the following principles:

"(a) A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.

"(b) Both parents are mutually responsible for the support of their children.

"(c) The guideline takes into account each parent's actual income and level of responsibility for the children.

"(d) Each parent should pay for the support of the children according to his or her ability.

"(e) The guideline seeks to place the interests of children as the state's top priority.

"(f) Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children.

"(g) Child support orders in cases in which both parents have high levels of responsibility for the children should reflect the increased costs of raising the children in two homes and should minimize significant disparities in the children's living standards in the two homes.

"(h) The financial needs of the children should be met through private financial resources as much as possible.

"(i) It is presumed that a parent having primary physical responsibility for the children contributes a significant portion of available resources for the support of the children.

"(j) The guideline seeks to encourage fair and efficient settlements of conflicts between parents and seeks to minimize the need for litigation.

"(k) The guideline is intended to be presumptively correct in all cases, and only under special circumstances should child support orders fall below the child support mandated by the guideline formula.

"(*l*) Child support orders must ensure that children actually receive fair, timely, and sufficient support reflecting the state's high standard of living and high costs of raising children compared to other states."

make application of the formula unjust or inappropriate, apparently subject only to review for abuse of that discretion. (*County of Lake* v. *Antoni, supra,* 18 Cal.App.4th at p. 1106; *County of San Diego* v. *Guy C.* (1994) 30 Cal.App.4th 1325, 1336 [36 Cal.Rptr.2d 222].) Of course, while the court must necessarily act discretionarily when it comes to statutorily undefined special circumstances, this discretion is not so broad that the court may ignore or contravene the purposes of the law regarding the attempted uniform calculation of child support. (*County of San Diego* v. *Guy C., supra,* 30 Cal.App.4th at p. 1336 ["statutory and rule analysis is the only approach which may properly be used in this highly regulated area"]; *In re Marriage of Fini, supra,* 26 Cal.App.4th at p. 1042 ["The Legislature has adopted a detailed and relatively inflexible child support statutory scheme much akin to the Internal Revenue Code."]; *In re Marriage of Wood* (1995) 37 Cal.App.4th 1059, 1066-1070 [44 Cal.Rptr.2d 236] [court's exercise of discretion under special circumstances category an abuse because it circumvented specific statutory mandate against consideration of new mate income].)

 Both Gibbs and the trial court relied on *County of Lake* v. *Antoni, supra,* 18 Cal.App.4th 1102, as a basis for a finding of special circumstances to justify a reduction of the presumptively correct support amount. However, *Antoni* is distinguishable from the circumstances in this case. In *Antoni,* the county sought an upward modification in 1992 of an existing child support order filed in 1983. The existing order required Antoni to pay $100 a month for his son, Neil. Neil lived with his mother, who was a full-time student on a limited scholarship and dependent on public assistance to support Neil. Antoni had a net monthly income of $1,978, but his monthly expenses were $3,709, which included $1,378 in required monthly payments for debts amounting to $41,444. These debts were apparently for expenditures on clothing and household articles. Antoni was living with his wife, his eight-year-old son, and his seventeen-year-old stepdaughter. Considering his son as a hardship deduction, Antoni's presumptive amount of monthly child support would be $419.06 a month. The court calculated this amount as $494 because it did not apply a hardship deduction for Antoni's son who was living with him. However, the court reduced this amount by $200, finding as special circumstances that (1) Antoni was providing for two children living with him, with the likelihood he would have been entitled to a hardship deduction, and (2) he had an extraordinarily high debt service because of debt " 'seemingly incurred for living needs.' " (*Id.* at p. 1105.) The county appealed. The court rejected the county's claim of abuse of discretion by the trial court as follows:

"The County argues that Antoni's consumer debts should not be allowed to affect the amount of child support as a special circumstance under section

4721, subdivision (e)(6). After suggesting that high consumer debt is regrettably common, the County contends that the trial court's approach 'would give an obligor parent *carte blanche* to overspend on optional, nonessential items for himself and others as to whom he has no legal duty of support . . . .'

"The trial court's exercise of its discretion in light of the facts before it does not present the ominous picture the County suggests. When the County sought to quadruple Antoni's support obligation after nine years, the trial court appropriately considered Antoni's situation at that time. That situation included Antoni's servicing a debt burden that already was in place while supporting another son and his 17-year-old stepdaughter. Thus, it is apparent that the trial court's decision to set the support payments at nearly three times the previous level, but $125 per month less than the County sought, was founded on the best interests of all of the children. (See § 4721, subd. (e).) We find no abuse of discretion." (*County of Lake* v. *Antoni, supra,* 18 Cal.App.4th at p. 1106.)

The instant case is distinguishable on two very important grounds. First, in 1994, the Legislature added section 4071.5, which provides: "For purposes of computing the minimum level of child support under Section 4070, no hardship shall be deemed to exist and no deduction from income shall be granted if aid payments are being made pursuant to Chapter 2 (commencing with Section 11200) of Part 3 of Division 9 of the Welfare and Institutions Code on behalf of a child or children of the parent seeking the deduction, even if the payments are being received by the other parent."

Thus, unlike *Antoni*, Gibbs was precluded statutorily from claiming hardship deductions for his other children, or any other deduction from income on any basis because public assistance was being given by the County on behalf of Gibbs's son. Although the court did not allow a hardship deduction, by considering this factor in reducing the support amount, the court essentially circumvented the statutory prohibition. (See, e.g., *In re Marriage of Wood, supra,* 37 Cal.App.4th at pp. 1066-1070 [court's exercise of discretion under special circumstances category an abuse because it circumvented specific statutory mandate against consideration of new mate income].) Further, the court had already factored in an add-on in the amount of $800 monthly for child care expenses related to Gibbs's children living in his home in determining the proper guideline support.

Second, Gibbs presented no evidence regarding the nature of his large consumer debt. Unlike in *Antoni*, it is not apparent from Gibbs's income and expense declaration that his debts were incurred for the purpose of "living

needs" such as clothing and household items. Here, the creditors listed are American Express ($3,200), Bank of America Visa ($722), Central State Visa ($7,500), IDS ($7,000), and Lomas Mortgage Usa, Inc. ($15,500). Gibbs did not testify or offer other evidence to show what items or types of items he purchased with the credit cards and loans. Thus, on this record, the trial court could only speculate with respect to what purpose the debt money was used. Furthermore, to the extent Gibbs's debt could be considered as a special circumstance to lower the support amount, the court would have to consider, as the court in *Antoni* did, all of the household income available to pay the debt—not just Gibbs's net disposable income. Unlike Antoni's spouse, who contributed an unspecified income through a temporary, seasonal job, Gibbs's spouse contributes approximately $50,000 in annual income to the household. Taking into consideration the combined household income, it is clear Gibbs is not in the same financial bind as was Antoni.

Also, although the trial court found that reducing the child support amount to $675 a month was in the best interest of all Gibbs's children, it is not clear how this would be so. The court did not articulate its reasoning. The most logical assumption is that if Gibbs were required to pay the additional $163 per month, this would somehow lower the standard of living of Gibbs's three children living with him. There is no doubt that paying even $675 a month would require Gibbs to restructure the family budget to accommodate this new expense. Nothing in the record shows, however, that paying $838 a month would so severely cut into the Gibbs family budget that it would cause a hardship detrimental to the three children in the Gibbs family. Again, while the best interests of all the children was a proper concern for the trial court, the record simply does not support the conclusion that a reduction in the presumptive amount of support from $838 to $675 was in the best interest of all the children. It was certainly not in Deshaun's best interest, who like Gibbs's other children, is entitled to share in Gibbs's standard of living. (*County of Alameda* v. *Johnson* (1994) 28 Cal.App.4th 259, 264 [33 Cal.Rptr.2d 483]; § 4053, subd. (f) ["Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children."].) In this respect, Gibbs had already received a windfall by not having had to support Deshaun until he had reached the age of 15. During his entire life, Deshaun had lived on public assistance instead of being supported by his father, who apparently has always been financially able to support him. Further, the County did not seek three years' back-support, as it was entitled to do in this case. (*In re Marriage of Hyon & Kirschner* (1991) 231 Cal.App.3d 449, 454 [282 Cal.Rptr. 408]; *Amie* v. *Superior Court* (1979) 99 Cal.App.3d 421, 427 [160 Cal.Rptr. 271].)

Finally, to the extent the trial court relied on the fact there was no evidence Deshaun's mother was unemployable, it was improper since the

record does not show she was intentionally remaining unemployed and relying on a subsequent spouse's income. (See § 4057.5, subd. (b).)[5] The court placed the burden on the wrong party. (See § 4057, subd. (b).) It was up to Gibbs to prove Deshaun's mother's lack of employment was intentional or voluntary in order for the court to consider this factor in determining child support. As noted earlier, the fact the child support order might improve the standard of living of Deshaun's household, including his sibling and mother, is not a special circumstance justifying a reduction. (*County of Alameda* v. *Johnson, supra,* 28 Cal.App.4th at p. 264 [fact that other members of family unrelated to paying father might be benefited beyond mere subsistence levels is not a special circumstance, but one that typically comes into play if the noncustodial parent has a substantial income].)

We conclude the trial court abused its discretion by lowering the presumptively correct child support amount because the facts fail to support a finding of special circumstances establishing the guideline support is unjust or inappropriate.

DISPOSITION

The judgment is reversed. Each party shall pay its own costs on appeal.

Ardaiz, P. J., and Vartabedian, J., concurred.

---

[5]Section 4057.5, subdivision (a) precludes consideration of a new mate's income in determining or modifying child support except in an extraordinary case. Subdivision (b) provides that "For purposes of this section, an extraordinary case may include a parent who voluntarily or intentionally quits work or reduces income, or who intentionally remains unemployed or underemployed and relies on a subsequent spouse's income."