[No. F028500. Fifth Dist. Mar. 15, 1999.]

LISA ANN MORENO, Plaintiff and Appellant, v.
EDGAR RAY DRAPER, JR., Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I. and III.

888

**COUNSEL**

Daniel E. Lungren and Bill Lockyer, Attorneys General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and M. J. Hamilton, Deputy Attorneys General, for Plaintiff and Appellant.

Reid & Reid and Anthony K. Reid for Defendant and Respondent.

**OPINION**

**WISEMAN, J.**—For purposes of calculating child support, a noncustodial parent is ineligible for a hardship deduction or any other deduction if he or she has a child receiving public assistance. (*County of Stanislaus* v. *Gibbs* (1997) 59 Cal.App.4th 1417 [69 Cal.Rptr.2d 819]; Fam. Code, § 4071.5.) In *County of Orange* v. *Ivansco* (1998) 67 Cal.App.4th 328 [78 Cal.Rptr.2d 886], the Fourth District, Division Three, held that Family Code section 4071.5 is unconstitutional. We respectfully disagree and hold that Family Code section 4071.5 is constitutional and does not violate the equal protection clause under the Fourteenth Amendment. We agree with *Ivansco* on two points: 1) section 4071.5 does create two classes of parents paying child support—those with children receiving public assistance and those with children *not* receiving public assistance; and 2) there is a fundamental right

to raise one's own children in his or her own home. Unlike *Ivansco*, we conclude that section 4071.5 does not *infringe* on that fundamental right; thus a strict scrutiny analysis is not required. Additionally, we conclude requiring a noncustodial parent to take full responsibility for his or her calculated guideline share of support in raising a noncustodial child is rationally related to the allocation of limited public funds.

### PROCEDURAL HISTORY

On February 11, 1997, the Stanislaus County District Attorney, Family Support Division, filed a notice of motion to modify a child support order. The existing order was filed on August 5, 1991, and ordered Edgar Ray Draper, Jr. (Draper) to pay $196 per month on behalf of his son, Charles.

A hearing occurred on March 25, 1997, where the court calculated the guideline child support at $452 per month. The court, however, deviated from the guideline amount, and ordered child support in the amount of $275 per month.

Lisa Ann Moreno (Moreno) now appeals contending: (1) the court erred in deviating from the guideline amount based on a hardship deduction, which is explicitly prohibited; (2) in the alternative, if the court deviated from the guideline amount pursuant to a "special circumstances" deduction under Family Code section 4057, subdivision (b)(5),[1] that this discretion was unavailable because Charles was receiving public assistance; and (3) the court erred in imputing income to Moreno in its support calculation.

### FACTUAL HISTORY

On December 24, 1996, Draper filed an income and expense declaration with the family support division. Draper's declaration indicated he had a wife who did not work outside the home, and three children ages five, two, and nine months. It further declared that Draper had a monthly gross income average of $2,925.34 over the past 12 months, gross income of $2,436.01 over the past month, and monthly expenses of $2,290.83, including $700 for rent and $354 for a car payment.

At the March 25, 1997, hearing Draper provided his most recent pay stub indicating his monthly gross income was $2,732. Draper's counsel indicated Draper made $14.50 an hour in the construction field, and while he was eligible for overtime when such work is available, three employees at the same level as Draper had just been laid off that week. The district attorney

---

[1]All further statutory references are to the Family Code.

submitted a wage verification showing Draper's average monthly gross income for 1996 was $3,044.

The district attorney also provided information regarding Moreno's earning capacity. According to the district attorney, Moreno had gone through the GAIN (Greater Avenues for Independence) program as a cook's helper. She then worked for a period of three days at a salary of $5 an hour, but left that employment because she could not afford child care for her other two children.

Draper's attorney admitted to the court that he was unable to seek a hardship deduction under section 4071.5, as Charles was currently receiving public assistance, but sought a special circumstance deduction under section 4057, subdivision (b)(5). According to Draper's attorney, the need for a special circumstance deduction was based on Draper's net monthly income of approximately $2,000, having a wife who did not work, three children currently living with him, and residence in Santa Clara County.

The court determined Draper's income to be $2,732 per month based on his most recent paycheck. Draper was also given a $77 monthly credit for health insurance payments. The court then imputed to Moreno an earning capacity of $500 per month. After deciding on these numbers, the court calculated Draper's presumed child support to be $452 per month.

The court, however, chose to deviate from the presumed amount based on: 1) the fact the previous support order had not been modified since 1991; 2) Draper and Moreno had both chosen to have additional children; and 3) because Draper's current expenses were reasonable, it was in the best interests of *all* the children for support to be in the amount of $275 per month.

## DISCUSSION

### I. *Introduction**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### II. *Constitutionality of section 4071.5*

We return to Moreno's claim that the trial court erred in granting Draper a hardship deduction under section 4071.5, as Draper was statutorily ineligible for such a deduction since Charles was receiving public assistance.

*See footnote, *ante*, page 886.

Section 4071.5 provides: "For purposes of computing the minimum level of child support under Section 4070, no hardship shall be deemed to exist and no deduction from income shall be granted if aid payments are being made pursuant to Chapter 2 (commencing with Section 11200) of Part 3 of Division 9 of the Welfare and Institutions Code on behalf of a child or children of the parent seeking the deduction, even if the payments are being received by the other parent."

At the hearing, Draper conceded he was not eligible for a hardship deduction. Instead, Draper argued the deduction granted by the court was not a hardship deduction, but rather a special circumstances deduction under section 4057, subdivision (b)(5).[2] Moreno counters by relying on our holding in *County of Stanislaus* v. *Gibbs, supra,* 59 Cal.App.4th 1417, where we held it was error to grant Gibbs a hardship deduction, since his noncustodial child was receiving public assistance. (*Id.* at p. 1426.)

But for a recent appellate case, *County of Orange* v. *Ivansco, supra,* 67 Cal.App.4th 328, we would agree with Moreno, and our analysis would end here. As previously mentioned, *Gibbs* held that where a child was receiving public assistance, the noncustodial parent was statutorily precluded from claiming a hardship deduction "or any other deduction." (*County of Stanislaus* v. *Gibbs, supra,* 59 Cal.App.4th at p. 1426.) In *Ivansco,* however, the court addressed a novel issue regarding section 4071.5: its constitutionality under the equal protection clause. Under the circumstances, we feel it necessary to address the constitutionality of section 4071.5, and the validity of *Ivansco* in the context of this case.

In *Ivansco,* the court set child support in the amount of $512 per month commencing May 15, 1992, on behalf of twins Jaime and Alexander. In 1995, the county filed an order to show cause seeking to increase the amount of the existing order. The mother of the twins was receiving public assistance on their behalf. At the time of the filing, however, Ivansco's 14-year-old son from a prior marriage was now living with him, and because the mother paid no support, Ivansco was the teenager's sole provider. After a

---

[2]Draper contended that if section 4071.5 did not allow for a hardship deduction, the trial court was still allowed to use its discretion to grant a special circumstance deduction under section 4057. Even had we found this to be the case, we would still find a special circumstance deduction inappropriate.

The only special circumstance here is that Draper now has a new family. There is no evidence of any consumer debt directly related to living expenses, as in *County of Lake* v. *Antoni* (1993) 18 Cal.App.4th 1102 [22 Cal.Rptr.2d 804], nor is there any evidence relating to the three special circumstances noted in section 4057. Although the statute indicates the list is not exhaustive, if merely having a new family and the costs associated with supporting that new family *without more* were considered a special circumstance, it would circumvent the purpose of section 4071.5 and render it meaningless.

hearing, the court ordered child support in the amount of $975 monthly on behalf of the twins. (67 Cal.App.4th at p. 331.)

On appeal, Ivansco argued that section 4071.5 was "unconstitutional because it deprives the trial court of discretion to consider a payor's expenses for children living with him or her if the children for whom support is being determined are AFDC recipients." (*County of Orange* v. *Ivansco*, *supra*, 67 Cal.App.4th at p. 331, fn. omitted.) The appellate court agreed, and remanded with directions for the trial court to reconsider the child support order in light of the discretion now available to it. (*Id.* at p. 338.)

Although *Ivansco* was decided after the briefing in this case, in light of its holding, we raised the issue with the parties, requested supplemental briefing, and now proceed with our own analysis of the constitutionality of section 4071.5.

## A. *The equal protection clause*

■ We begin with a discussion of the equal protection clause of the Fourteenth Amendment, which has been interpreted by the United States Supreme Court to mean "that all persons similarly circumstanced shall be treated alike." (*F.S. Royster Guano Co.* v. *Commonwealth of Virginia* (1920) 253 U.S. 412, 415 [40 S.Ct. 560, 562, 64 L.Ed. 989].) As clearly articulated by Justice White in *Cleburne* v. *Cleburne Living Center, Inc.* (1985) 473 U.S. 432 [105 S.Ct. 3249, 87 L.Ed.2d 313]:

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike. [Citation.] Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. [Citations.] When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, . . . and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

"The general rule gives way, however, when a statute classifies by race, alienage, or national origin. These factors are so seldom relevant to the

achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others. For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. [Citations.] Similar oversight by the courts is due when state laws impinge on personal rights protected by the Constitution. [Citations.]" (473 U.S. at pp. 439-440 [105 S.Ct. at p. 3254].)

■ Thus, in order for the equal protection clause to even be applicable, we first determine whether section 4071.5 either creates classifications or affects a fundamental right. If so, we then determine the level of scrutiny to be applied in evaluating the statute. If a fundamental right (e.g., voting, interstate travel) or suspect classification (e.g., race, national origin) is involved, the strict scrutiny standard is used. If a quasi-suspect classification (e.g., gender, illegitimacy) is involved, intermediate scrutiny is applied.[3] And, if neither a fundamental right is affected nor a suspect or quasi-suspect classification is involved, then the rational basis standard applies. (See, e.g., *Cleburne* v. *Cleburne Living Center, Inc., supra,* 473 U.S. 432, 439-442 [105 S.Ct. 3249, 3253-3256].)

### B. *Level of scrutiny to be applied*

#### 1. *Classifications drawn by section 4071.5*

■ Here, we agree with *Ivansco* that section 4071.5 "creates two classes of parents paying child support. Both groups support children who do not reside with them and children who do reside with them." (*County of Orange* v. *Ivansco, supra,* 67 Cal.App.4th at pp. 332-333.) However, although section 4071.5 does create classifications, "[l]egislative classifications are not per se violative of federal . . . equal protection guarantees. [Citations.]" (*State of Washington* v. *Cobb* (1987) 194 Cal.App.3d 773, 776 [239 Cal.Rptr. 726].) As we shall explain, we believe the classes created by section 4071.5 are properly analyzed by applying the rational basis standard.

Although *Ivansco* correctly identified two classes of parents created by section 4071.5 as consisting of similarly situated, noncustodial *parents* who

---

[3]Under intermediate scrutiny, "the party seeking to uphold a statute . . . must carry the burden of showing an 'exceedingly persuasive justification' for the classification. [Citations.] The burden is met only by showing at least that the classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.' [Citation.]" (*Mississippi University for Women* v. *Hogan* (1982) 458 U.S. 718, 724 [102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090].)

are treated dissimilarly, it later shifts its focus from the parents to the *siblings* of AFDC (Aid to Families With Dependent Children) recipients. The court states: "The classifications we consider consist of parents who *support children other than those receiving AFDC.* The deduction relates to expenses for those other children and not to the children for whom support is being determined. The issue we address is the constitutionality of the resulting burden on those other children. These distinctions make the difference. It is one thing to find constitutional a statute which differentiates between noncustodial parents whose children receive AFDC benefits and noncustodial parents whose children do not receive such benefits. (*State of Ohio* v. *Barron* (1997) 52 Cal.App.4th 62 [60 Cal.Rptr.2d 342].) It is something else to uphold a statute which discriminates against *siblings* of the AFDC recipients by placing the burden on them." (*County of Orange* v. *Ivansco, supra,* 67 Cal.App.4th at pp. 337-338, italics in original.) While we believe the correct classes are those comprised of parents, in our view, it does not matter whether the class is defined as parents or siblings.

In *Lyng* v. *Castillo* (1986) 477 U.S. 635, 638 [106 S.Ct. 2727, 2729, 91 L.Ed.2d 527], a case involving the federal food stamp program (7 U.S.C. § 2011 et seq.), the United States Supreme Court held that a statutory requirement generally treating parents, children, and siblings who lived together as a single household did not violate the equal protection guarantee in the due process clause of the Fifth Amendment. In determining the level of scrutiny to be applied based upon the classifications created, the court said: "The disadvantaged class is that comprised by parents, children, and siblings. Close relatives are not a 'suspect' or 'quasi-suspect' class. As a historical matter, they have not been subjected to discrimination; they do not exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group; and they are not a minority or politically powerless. See, e.g., *Massachusetts Board of Retirement* v. *Murgia* (1976) 427 U.S. 307, 313-314 [96 S.Ct. 2562, 2566-2567, 49 L.Ed.2d 520] (*per curiam*). In fact, quite the contrary is true." (*Lyng* v. *Castillo, supra,* 477 U.S. at p. 638 [106 S.Ct. at p. 2729].)

Therefore, whether the classes here are identified as classes of parents, or whether a court focuses on any burden which may shift to custodial children, the end result is the same. Since neither is a suspect or quasi-suspect class, the rational basis standard is the appropriate test to be used based on the classifications created by section 4071.5.

2. *Right at issue*

Section 4071.5 affects parents who, in addition to having a noncustodial child receiving aid payments, are also currently raising other custodial

children. We agree with *Ivansco* that section 4071.5 implicates a fundamental right, i.e., the right to raise one's own children in his or her own home. (*County of Orange* v. *Ivansco, supra,* 67 Cal.App.4th at p. 333.) The right to rear one's own children has long been recognized as a fundamental right. (*Stanley* v. *Illinois* (1972) 405 U.S. 645, 650 [92 S.Ct. 1208, 1212, 31 L.Ed.2d 551] ["The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer* v. *Nebraska* 262 U.S. 390, 399 [43 S.Ct. 625, 626, 67 L.Ed. 1042, 29 A.L.R. 1446] (1923), 'basic civil rights of man,' *Skinner* v. *Oklahoma* 316 U.S. 535, 541 [62 S.Ct. 1110, 1113, 86 L.Ed. 1655] (1942), and '(r)ights far more precious . . . than property rights,' *May* v. *Anderson* 345 U.S. 528, 533 [73 S.Ct. 840, 843, 97 L.Ed. 1221] (1953)."].)

However, in what we view as the fulcrum for our analysis, we do not agree with *Ivansco* that section 4071.5 *infringes* on the fundamental right identified thus requiring a strict scrutiny analysis. In *Ivansco*, the county argued Ivansco's fundamental right was not "invidiously compromised" by section 4071.5, contending that Ivansco was no worse off financially than if his twins were not on AFDC. The court noted in response to the county's financial argument, however, that "this is not a case of 'what would have happened if . . . .' Harmless error has no place in the determination of a statute's underlying constitutionality." (*County of Orange* v. *Ivansco, supra,* 67 Cal.App.4th at p. 334.) Without further analysis regarding whether section 4071.5 *actually infringed* on Ivansco's fundamental right, the court proceeded to apply the strict scrutiny standard.

*Ivansco* apparently determined the noncustodial parent's fundamental right to raise his own custodial children in his own home was compromised based on a change in the amount of child support being paid to the noncustodial child. The court reasoned that by increasing the guideline child support to the noncustodial child without discretion to consider the current custodial children, section 4071.5 lowered the amount of income available to support the custodial children. Thus, the noncustodial parent's fundamental right was affected which resulted in application of the strict scrutiny standard. In our view, the logic and conclusion reached by *Ivansco* do not comport with existing law.

In *Regan* v. *Taxation with Representation of Wash.* (1983) 461 U.S. 540, 549-550 [103 S.Ct. 1997, 2002-2003, 76 L.Ed.2d 129], the United States Supreme Court indicated:

"We have held in several contexts that a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny. *Buckley* v. *Valeo* 424 U.S. 1 [96 S.Ct.

612, 46 L.Ed.2d 659] (1976), upheld a statute that provides federal funds for candidates for public office who enter primary campaigns, but does not provide funds for candidates who do not run in party primaries. We rejected First Amendment and equal protection challenges to this provision without applying strict scrutiny. *Id.*, at 93-108 [96 S.Ct. at pp. 670-677]. *Harris* v. *McRae* [(1980) 448 U.S. 297 [100 S.Ct. 2671, 65 L.Ed.2d 784]], and *Maher* v. *Roe*, 432 U.S. 464 [97 S.Ct. 2376, 53 L.Ed.2d 484] (1977), considered legislative decisions not to subsidize abortions, even though other medical procedures were subsidized. We declined to apply strict scrutiny and rejected equal protection challenges to the statutes.

"The reasoning of these decisions is simple: 'although government may not place obstacles in the path of a [person's] exercise of . . . freedom of [speech], it need not remove those not of its own creation.' [Citation.]"

Here, Draper made the voluntary choice to remarry and have three additional children in a one-income household. There was no guarantee made to Draper that the amount of child support he paid on behalf of Charles would remain constant ad infinitum. Section 4071.5 is not, in our opinion, placing any obstacles in the path of Draper's right to raise his own family in his own home. The factors Draper sought to use to reduce the presumed amount of child support—that he was remarried with three new children, were those of his own creation. California taxpayers are not required to subsidize his fundamental right by granting him any type of deduction from the guideline child support amount when one of his children is receiving public assistance.

We are not oblivious to Draper's plight or that of his new family, but our job is to apply the law as it was intended to the facts of the cases before us. Here, the law is clear that section 4071.5 should not be subject to a strict scrutiny analysis.

C.   *Rational basis analysis*

The question we now must answer is whether section 4071.5 is rationally related to a legitimate state interest. Section 4071.5 passes this test.

The court in *Ivansco* reviewed the legislative history of section 4071.5 and concluded that the "legislative history does not shed much light on its intent," (*County of Orange* v. *Ivansco, supra,* 67 Cal.App.4th at p. 334, fn. omitted.) However, *Ivansco* acknowledges that a review of similar legislation makes its goal "crystal clear." That statute "proposed 'to discourage growth of family size while on AFDC by not paying for any additional children born 10 months after the family has been on AFDC . . . or for any

additional child conceived while either parent is receiving AFDC . . . .' [Citation.]" (*Id.* at pp. 334-335, fn. omitted.)

The state's interest can be distilled to the following: how to allot the limited amount of funds it has available for distribution to families who qualify for AFDC. Further, the allocation of public funds has previously been recognized as a legitimate interest of the state. (See *Dandridge* v. *Williams* (1970) 397 U.S. 471, 487 [90 S.Ct. 1153, 1162-1163, 25 L.Ed.2d 491]; *Valot* v. *Southeast Local School Dist. Bd. of Educ.* (6th Cir. 1997) 107 F.3d 1220, 1227 ["Defendants' interest in protecting the public fisc is not only legitimate, but also laudable."].) Thus, the only remaining question is whether section 4071.5 is rationally related to a legitimate interest of the state. In our opinion, it clearly meets this standard.

*Ivansco* concluded, "[t]he county has failed to suggest, and we have not found, a rational basis or purpose for this classification." (*County of Orange* v. *Ivansco, supra,* 67 Cal.App.4th at p. 338.) We respectfully disagree with *Ivansco,* and conclude there is a rational basis for the classifications created by section 4071.5.

In our view, requiring a noncustodial parent to take full responsibility for his or her calculated guideline share of support in raising a noncustodial child is rationally related to the allocation of limited public funds. It seems quite rational for a state legislature to decide on behalf of its taxpayers that it will not allow for a deduction in the guideline support amount on behalf of a noncustodial parent who, while claiming he or she cannot afford to pay the full amount of support for a child or children, has voluntarily chosen to support additional custodial children. This is not to say we cannot understand why a person may want to start a new life and have a new family where a prior relationship has broken down. But we believe it is rational for a state to protect its limited fiscal resources by not allowing noncustodial parents to jump from family to family at the expense of ignoring the responsibilities they have incurred with their prior families.

As recognized by the United States Supreme Court in *Dandridge,* ". . . the intractable economic, social, and even philosophical problems presented by the public welfare assistance programs are not the business of this Court. . . . [T]he Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating public welfare funds among the myriad of potential recipients." (*Dandridge* v. *Williams, supra,* 397 U.S. at p. 487 [90 S.Ct. at p. 1163].)

In conclusion, we find that section 4071.5 is constitutional as applied to noncustodial parents supporting both custodial and noncustodial children,

even where the trial court has no discretion to grant the noncustodial parent a deduction.[4] Therefore, as we held in *Gibbs*, the trial court here did not have the discretion to grant Draper a hardship deduction or any other deduction from the presumed guideline support amount.

III. *Imputing income to Moreno**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

This matter is remanded for the trial court to redetermine Draper's child support in conformity with the guideline amounts. Each party shall pay its own costs on appeal.

Dibiaso, Acting P. J., and Harris, J., concurred.

---

[4]We observe that on March 12, 1999, the First District filed *City and County of San Francisco* v. *Garnett* (1999) 70 Cal.App.4th 845 [82 Cal.Rptr.2d 924], which reaches the same result.

*See footnote, *ante*, page 886.